IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **LEON NORRIS,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-07-0907** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **COUNTY OF LYCOMING, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Leon Norris, an inmate confined at the Fort Dix Federal Correctional Institution ("FCI-Fort Dix") in Fort Dix, New Jersey, commenced this action *pro se* by filing a civil rights complaint pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff names the following Defendants: The County of Lycoming; David Desmond, Warden of Lycoming County Prison ("LCP"); Catherine Lynch, a nurse employed by LCP; Medical Staff Member Doe, a nurse employed by LCP; and William Keenan, M.D., a physician employed by LCP.  Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs while he was incarcerated at LCP.

Presently pending before the court is a motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed on behalf of Defendants the County of

Lycoming, David Desmond, Catherine Lynch, and Medical Staff Member Doe (Doc. 19) and a motion to appoint counsel (Doc. 39) filed by Plaintiff.  Defendant Keenan also has filed a motion to dismiss, or in the alternative, for summary judgment (Doc. 25) that is not yet ripe for disposition.

For the reasons set forth below, the motion to dismiss filed on behalf of Defendants the County of Lycoming, Desmond, Lynch, and Doe will be granted in part and denied in part; the motion to appoint counsel will be granted provided that *pro bono* counsel can be located to assist Plaintiff; and the deadline for Plaintiff to submit his opposition to the motion filed by Defendant Keenan will be stayed pending the search for *pro bono* counsel.

I.    **Motion to Dismiss by Defendants the County of Lycoming, Desmond, Lynch, and Doe**

   A.   **Background**

       1.  **Allegations of Complaint**

All of the following facts are stated in the complaint and are taken as true for purposes of disposing of the instant motion.

Norris was incarcerated at LCP between January 2005 and June 2005 while he was awaiting a hearing on federal charges.  (Doc. 1 ¶ 9.)  Norris suffers from Crohn's disease.  (*Id.*)  On or about March 2005, Norris began to experience some initial signs

2

that his Crohn's disease was recurring.  (*Id.* ¶ 10.)  At that time, one of the medical staff at LCP noted these symptoms and prescribed Metamucil.  (*Id.* ¶ 11.)  This staff member also made a notation on Norris's medical chart that, if Norris's condition did not improve, a consultation with a gastrointestinal specialist should be considered. (*Id.*)

On April 4, 2005, a medical staff member made a notation on Norris's chart that, although his symptoms continued, the Metamucil was providing some relief. (*Id.* ¶ 12.)  However, this staff member also noted that Mr. Norris was referred to "GI for eval." (*Id.*)   Norris was scheduled for an evaluation with Susquehanna Gastrointestinal Specialists for April 20, 2005.  (*Id.* ¶ 13.)  Norris also was scheduled for a small bowel series on April 24, 2005.  (*Id.*)  However, no mention as to the results of these tests was made on Norris's medical chart until they were requested three weeks later, on May 17, when Norris's condition was so severe that he was taken to Williamsport Hospital for treatment.  (*Id.* ¶ 14.)

Notations on Norris's medical chart made on May 9 and May 10, 2005 state that he had "folliculitis," sinus congestion, pharyngitis and mouth ulcers.  (*Id.* ¶ 15.)

On May 15, 2005, Defendant Lynch examined Norris and noted that he exhibited the following symptoms: fever; dizziness; chills; and canker sores in his mouth that were "no better." (*Id.* ¶ 16.)  Defendant Lynch also noted that Norris had

lost sixteen pounds in two weeks.  (*Id.*)  Lynch made a notation that Norris should be seen by an "MD."  (*Id.*)  However, Norris was not seen by any medical personnel other than Defendant Lynch on May 15.  (*Id.* ¶ 17.)  There is no indication that Lynch attempted to consult with a doctor that day regarding Norris.  (*Id.* ¶ 18.)

There is no entry in Norris's medical chart on May 16, nor is there any other indication that Norris was seen by a doctor or other medical staff that day or that Defendant Lynch attempted to bring Norris's deteriorating condition to a doctor's attention.  (*Id.* ¶ 19.)

At 8:00 a.m. on May 17, Medical Staff Member Doe saw Norris.  (*Id.* ¶ 20.) Defendant Doe noted that Norris was unable to take his medication due to the numerous painful canker sores in his mouth and that Norris requested that he be admitted to the hospital.  (*Id.* ¶ 21.)  Defendant Doe also noted that LCP still had not obtained results of Norris's small bowel series testing that was performed at the radiology department of the Williamsport Hospital.  (*Id.* ¶ 22.)  The notation by Defendant Doe was unsigned, and the handwriting is not similar to that of any of the other entries on Norris's medical chart.  (*Id.* ¶ 20.)

Almost twelve hours later, Nurse Oakes examined Norris.  (*Id.* ¶ 24.)  Oakes noted that Norris still had chills, severe pain, canker sores, unusual weight loss, and was unable to eat, drink or take his medication.  (*Id.* ¶ 24.)  Oakes made a notation

that Dr. Schildt was paged immediately.  (*Id.* ¶ 25.)  Dr. Schildt ordered that Norris be

transported to the emergency room of the Williamsport Hospital at once.  (*Id.* ¶ 26.)

Norris stayed at the Williamsport Hospital for a few hours, where he received

intravenous fluids and nutrients, and then was sent back to LCP.  (*Id.* ¶ 27.)  Upon

discharge from the hospital, "magic mouthwash" was ordered for Norris, but no other

discharge orders were given.  (*Id.* ¶ 28.)

Norris's symptoms continued to worsen upon his return to LCP.  (*Id.* ¶ 29.)

Despite his trip to the emergency room on May 17, Norris was only checked by

prison medical personnel twice on May 18.  (*Id.* ¶ 30.)  On May 18, a notation was

made on Norris's medical chart that a nurse spoke with Defendant Keenan about

Norris.  (*Id.* ¶ 31.)  The chart states that Keenan "will address magic mouthwash

5-19-05 on rounds."  (*Id.*)

On May 19, 2005, Defendant Keenan examined Norris, but only Norris's

canker sores were addressed.  (*Id.* ¶ 32.)  The more serious problems presented by

Norris's Crohn's disease symptoms, such as his significant weight loss and abnormal

rectal and urinal discharge, were not addressed by Keenan.  (*Id.*)

On May 20, a nurse who examined Norris wrote in his medical chart that she

"checked with Dr. Keenan about sending this inmate for flu appt. and GI doctor."  (*Id.*

¶ 33.)  There is nothing in the record to suggest that Dr. Keenan took any action.  (*Id.*)

On May 22, Defendant Lynch noted that Norris is "not breathing right, not sleeping, not eating + nasal congestion." (*Id.* ¶ 34.) Lynch noted that Norris had prominent ulcers on lips, inner cheeks, and throat. (*Id.*) Lynch did not consult with a doctor. (*Id.*)

Norris did not receive medical care on May 23. (*Id.* ¶ 35.)

At 10:45 a.m. on May 24, Nurse Oakes noted in Norris's medical chart that medical personnel were called to Norris's cell because he was hyperventilating and having difficulty swallowing. (*Id.* ¶ 36.)

At 10:50 a.m., Nurse Oakes paged Defendant Keenan. (*Id.* ¶ 37.) Nurse Oakes continued to monitor Norris's vital signs and general condition for the next half hour. (*Id.* ¶ 38.)

At 11:30 a.m., Nurse Oakes again paged Dr. Keenan. (*Id.* ¶ 39.) Defendant Keenan called back and ordered some medication and nutrition supplements for Norris. (*Id.* ¶ 40.)

Nurse Oakes continued to monitor Norris and noted that his urine was an abnormal color. (*Id.* ¶ 41.) She also noted that Norris had lost seven pounds rapidly. (*Id.*) Nurse Oakes again paged Dr. Keenan. (*Id.*)

At noon, Defendant Keenan ordered that Norris be taken to the emergency room at Williamsport Hospital. (*Id.* ¶ 42.) Defendant Keenan did not perform an

examination of Norris at any time on May 24.  (*Id.* ¶ 43.)  Emergency room personnel stated that, since Keenan had not physically examined Norris, he would have to be examined by another doctor in the emergency room.  (*Id.* ¶ 44.)

Norris was taken to the Williamsport Hospital Emergency Room, where he later was admitted as an in-patient.  (*Id.* ¶ 45.)  Medical records from Norris's stay in the Williamsport Hospital indicate that Norris's bowel disease had become so extensive that it appeared to involve the vast majority of the mucosal surface of the colon.  (*Id.* ¶ 46.)  One doctor noted that, in consultation with dermatology, ENT, and infectious disease specialists, all signs pointed in the direction that the majority of Norris's symptomatology may in fact be related to Crohn's disease.  (*Id.* ¶ 47.)  During his stay at the Williamsport Hospital, doctors reported that they had to monitor Norris closely with serial x-rays and other methods "because of the severity of his disease."  (*Id.* ¶ 48.)

Norris's condition worsened while he was at Williamsport Hospital, and he was released on June 1, 2005 for additional treatment at West Chester Medical Center in Valhalla, New York, where he remained until his condition was stabilized.  (*Id.* ¶ 49.)

Defendants Lynch and Medical Staff Member Doe had ample notice of Norris's serious medical needs through his complaints and their own observations from medical examinations and testing.  (*Id.* ¶ 50.)

Upon information and belief, Defendant Lycoming County had notice of Norris's serious medical needs by way of his medical bills, particularly for his emergency room visit on May 17, 2005, which is paid for by the county. (*Id.* ¶ 51.) By virtue of their office and authority, Defendant Lycoming County had the power to ensure that medical and prison staff were not deliberately indifferent to Norris's medical needs. (*Id.* ¶ 52.)

All Defendants demonstrated deliberate indifference to Norris's medical needs by failing to ensure that he received appropriate and timely treatment. (*Id.* ¶ 53.) Defendants' denial of Norris's medical treatment has caused him unnecessary pain and suffering and the threat of tangible residual injury. (*Id.* ¶ 54.) At all times relevant, Defendants were acting under color of state law. (*Id.* ¶ 55.)

## 2. **Procedural History**

On May 18, 2007, Plaintiff filed his complaint. (Doc. 1.) Service of the complaint was directed by order dated June 26, 2007. (Doc. 9.) Because service was not accomplished, on December 12, 2007, the summons was reissued as to all Defendants. (Doc. 14.)

On February 4, 2008, a motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) was filed on behalf of Defendants the County of Lycoming, David Desmond, Catherine Lynch, and Medical Staff Member Doe. (Doc. 19.) On

February 19, 2008, Defendants filed their supporting brief.  (Doc. 23.)  Plaintiff filed

his opposition brief on March 3, 2008.  (Doc. 24.)  The motion is therefore ripe for

review.

On March 10, 2008, Defendant Keenan filed a motion to dismiss and motion to

strike pursuant to Fed. R. Civ. P. 12(f).  (Doc. 25.)  Following a request for an

extension of time, which was granted (Doc. 27), on April 7, 2008, Defendant Keenan

submitted a supporting brief.  (Doc. 30-1.)  Defendant Keenan styled his brief as

being in support of a motion to dismiss/motion for summary judgment and therefore,

he also submitted supporting exhibits (Docs. 30-3, 30-4, 30-5, 30-6, 30-7) and a

statement of facts (Doc. 31).

On May 20, 2008, Plaintiff filed a motion for an extension of time to file his

opposition to Defendant Keenan's motion.  (Doc. 36.)  He claimed that he had not

received a copy of Defendant Keenan's brief and supporting documents and sought

additional time to review and respond to it.  On May 21, 2008, the motion was

granted, Defendant Keenan was directed to serve a copy of his brief, exhibits, and

statement of facts on Plaintiff within five days, and Plaintiff was directed to file his

opposition within twenty-five days.  (Doc. 37.)

Plaintiff did not submit his opposition, and he did not request an additional

extension of time in which to do so.  Therefore, by order dated June 27, 2008,

9

Plaintiff was directed to file his opposition within fifteen days, or else Defendant Keenan's motion would be deemed unopposed and addressed on the merits.  (Doc. 38.)

On June 30, 2008, Plaintiff filed a motion for appointment of counsel (Doc. 39) and a supporting brief (Doc. 40).

## B.   Legal Standard

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case — some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).   "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.*  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Twombly*, 127 S. Ct. at 1965; *accord,*

10

*e.g., Phillips*, 515 F.3d at 238-39; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (The court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 127 S. Ct. at 1965, 1974; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Caroll*, 495 F.3d 62, 66 (3d Cir. 2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Twombly*, 127 S. Ct. at

1965, *quoted in Phillips*, 515 F.3d at 234.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the

12

complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci,* 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), *quoted in Erickson*, 127 S. Ct. at 2200.

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## C.   <u>Discussion</u>

In the instant motion to dismiss, Defendants Lycoming County, Desmond, Lynch, and Doe argue that the court should dismiss Plaintiff's claims against them because he failed to exhaust his administrative remedies, he has failed to state a cause of action upon which relief can be granted, and some of his claims are barred by the statute of limitations. For the reasons set forth below, the court agrees that Plaintiff fails to state a claim upon which relief can be granted as to Defendants Lycoming

County and Desmond, but disagrees in all other respects.

### 1. <u>Defendants Lycoming County and Desmond</u>

To prevail in an action under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F. 3d 798, 806 (3d Cir. 2000); *Moore v Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). A municipality is considered to be a "person" subject to suit under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). However, a municipality may not be subjected to liability under § 1983 on the theory of *respondeat superior*. *Id.* at 694-95; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Therefore, in order for municipal liability to be found, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Harris*, 489 U.S. at 385.

Norris fails to allege any direct involvement on the part of Lycoming County. He seeks to hold Lycoming County liable under a theory of *respondeat superior* "[b]y virtue of their office and authority." (*See* Doc. 1 ¶ 52.) His only allegation suggesting *some* involvement by Lycoming County is that they may have paid the bill for his May 17, 2005 emergency room visit. (*See id.* ¶ 51.) At most, this allegation would establish that Lycoming County knew that Norris had a medical emergency. It

is insufficient to establish that Lycoming County had any direct involvement in or personal knowledge of a constitutional violation. Accordingly, the court will grant the instant motion to dismiss with respect to Lycoming County without prejudice and Plaintiff will be granted leave to amend his complaint to state a claim against Lycoming County, if possible.

Norris fails to set forth a single allegation against Defendant Desmond in his complaint. It appears that he seeks to hold Desmond liable under Section 1983 in his capacity as the Warden of the Lycoming County Prison. As already noted, *respondeat superior* liability will not attach under § 1983. *Monell*, 489 U.S. at 385. Accordingly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The personal involvement requirement may be satisfied by a showing of "personal direction or of actual knowledge and acquiescence." *Id.* Norris fails to allege any personal involvement by Desmond. Therefore, the court will grant the instant motion to dismiss as to Defendant Desmond without prejudice and will grant Plaintiff leave to amend his complaint to state a claim against Desmond, if possible.

### 2. **Defendants Lynch and Doe**

Defendants Lynch and Doe argue that Norris's complaint should be dismissed for failure to exhaust his administrative remedies and because he fails to state a claim

15

upon which relief can be granted.  The court disagrees.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) ("PLRA"), requires that an inmate present his claims through an administrative grievance process before filing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  However, failure to exhaust is an affirmative defense that must be pleaded and proven by Defendants.  Fed. R. Civ. P. 8(c); *Jones v. Bock*, 549 U.S. 199, —, 127 S. Ct. 910, 919-20 (2007); *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in *Swierkeiwicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).  While a complaint may be subject to dismissal under Fed. R. Civ. P. 12(b)(6) when an affirmative defense such as exhaustion appears on its face, the Supreme Court has held that prisoners are not required to specially plead or demonstrate affirmative defenses such as exhaustion in their complaints.  *See Jones*, 127 S. Ct. at 919-20.

The PLRA provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted.

42 U.S.C. § 1997e(a) (emphasis added).  "Available" remedies are those "capable of

16

use" or those "at hand."  *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002).

Defendants argue that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies, but they do not state what administrative remedies are available at LCP.  (*See* Doc. 23-1 at 4.)  They argue that Plaintiff does not allege in his complaint that he filed a grievance.  (*See id.*)  But, in opposing their motion, Plaintiff asserts that LCP did not have a formal grievance procedure.  (*See* Doc. 24 at 1.)  Rather, he states that inmates are permitted to submit written requests.  (*See id.*) Plaintiff asserts that he submitted written requests to see the doctor and followed up by meeting with the "sergeant/lieutenant" regarding the "situation" where "Nurse Doe" told Plaintiff to stop submitting written requests to see the doctor.[1]  (*See id.*) Plaintiff then recounts that he was mocked by a correctional officer, and when he responded to the officer in anger, he was sent to the restrictive housing unit, where his sickness intensified.  (*See id.* at 2.)  Plaintiff claims that he was so sick that he was unable to shower and respond to mail and that he eventually became so sick with tremors that he was taken to the hospital for the second time in eight days.  (*See id.*)

Viewing the facts in the light most favorable to Plaintiff, the court cannot say that Plaintiff has failed to exhaust his administrative remedies.  It is not clear from the

---

[1]It is unclear whether the "Nurse Doe" Plaintiff refers to is the same individual who is named in this action as "Medical Staff Member Doe."

17

face of the complaint that Defendants had an effective administrative remedy in place. Moreover, to the extent such remedies were in place, Plaintiff's opposition suggests that a question of fact exists as to whether those remedies were "available" to him if he was told to stop submitting requests seeking medical attention and was placed in the restrictive housing unit when he attempted to follow up on his requests. It would be inappropriate to attempt to resolve this question of fact in disposing of a motion to dismiss.

Defendants Lynch and Doe also argue that Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted. Norris alleges that Defendants Lynch and Doe denied him adequate medical care. In order to establish an Eighth Amendment claim against a defendant for inadequate medical care under § 1983, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or

delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

At the motion to dismiss stage, the court concludes that Plaintiff's allegations that Defendants Lynch and Doe denied him adequate medical care by failing to consult with a doctor despite his worsening health condition are sufficient to state a claim.[2] Therefore, the motion to dismiss will be denied with respect to Defendants Lynch and Doe.

## II.   <u>Motion to Appoint Counsel</u>

Although indigent litigants have no constitutional or statutory rights to appointment of counsel in a civil case, the court has broad discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1). *Tabron v. Grace,* 6 F.3d 147, 153 (3d Cir. 1993). The *Tabron* court noted that "the district court must consider as a threshold matter the merits of the plaintiff's claim." *Id.* at 155. Next, if a claim has

---

[2]Defendants also argue that Plaintiff's allegations regarding Defendant Lynch's actions or inactions between May 15 and May 17, 2005 are barred by the applicable statute of limitations. (*See* Doc. 23-1 at 13.) The statute of limitations, like failure to exhaust, is an affirmative defense that must be pleaded and proven by Defendants pursuant to Fed. R. Civ. P. 8(c). Thus, while a complaint may be subject to dismissal under Fed. R. Civ. P. 12(b)(6) when an affirmative defense such as the statute of limitations appears on its face, prisoners are not required to specially plead the statute of limitations in their complaints. *See Jones*, 127 S. Ct. at 919-20. Here, it is not clear from the face of the complaint that any of Plaintiff's allegations are barred by the statute of limitations. Thus, the question as to whether any of Plaintiff's claims are barred by the statute of limitations is more appropriately reserved for a later stage of litigation.

arguable merit, "[t]he plaintiff's ability to present his or her claim is . . . a significant factor that must be considered in determining whether to appoint counsel." *Id.* at 156. "If it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to the appointing of counsel . . . and if such a plaintiff's claim is truly substantial, counsel should ordinarily be appointed." *Id.* In addition to the factors just noted, under *Tabron*, a district court's decision whether to appoint counsel should also be "informed" by a consideration of the following factors: "the difficulty of the particular legal issues;" "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation;" whether "a case is likely to turn on credibility determinations;" "where the case will require testimony from expert witnesses;" and "whether an indigent plaintiff could obtain counsel on his or her own behalf." *Id.* at 156, 157 n.5.

The *Tabron* court also held that the "appointment of counsel under § 1915(d) may be made at any point in the litigation and may be made by the district court *sua sponte*." *Id.* at 156. Finally, the *Tabron* court acknowledged that "courts have no authority to compel counsel to represent an indigent civil litigant," *id.* at 157 n.7, and cautioned against the indiscriminate appointment of counsel in view of the limited supply of competent attorneys willing to accept such appointments. *Id.* at 157.

In a subsequent decision, the Third Circuit Court of Appeals reiterated that "[i]ndigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citation omitted). The *Montgomery* court recognized that the criteria set forth in *Tabron* should be employed in addressing the appointment of counsel issue. In a recent, non-precedential decision, *Gordon v. Gonzalez*, No. 04-4623, 2007 WL 1241583, at *2 n.4 (3d Cir. Apr. 30, 2007), the Third Circuit Court of Appeals added that two other factors to be taken into consideration are: (1) the court's willingness to aid the indigent party in presenting his or her case; and (2) the available supply of lawyers willing to accept § 1915(e) requests within the relevant geographical area.

Upon consideration of the above factors, the court has determined that appointment of counsel is warranted. Plaintiff's claims appear to have merit in fact and law, and thus he has cleared the initial threshold. Plaintiff also has presented sufficient reasons to demonstrate that he is unable to present his own case. Plaintiff explains that he did not prepare his own complaint, but rather it was prepared by staff at the Lewisburg Prison Project. (*See* Doc. 39 ¶ 4.) Plaintiff represents that, on June 19, 2008, he contacted the Lewisburg Prison Project for assistance in litigating this case and was advised that no attorneys currently are available to assist him. (*See id.* ¶ 5.) Plaintiff also asserts that he received the assistance of another inmate in

21

preparing his motion to appoint counsel, but that he would no longer be receiving that help because the inmate was being transferred.  Based upon a review of the issues in this case, it appears that a significant amount of factual investigation would be required and that expert medical testimony may be necessary.

For these reasons, Plaintiff's motion for appointment of counsel will be granted, provided that *pro bono* counsel can be found through the *Pro Bono* Panel of the Federal Bar Association for the Middle District of Pennsylvania.  However, if the court is unable to locate counsel to assist Plaintiff in this matter, he must litigate the case himself.  The deadline for Plaintiff to submit his opposition to the motion filed by Defendant Keenan will be stayed pending the search for *pro bono* counsel.

An appropriate order will issue.

_____
                                          /s/ Sylvia H. Rambo
                                          Sylvia H. Rambo
                                          United States District Judge

Dated: July 24, 2008.

22

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **LEON NORRIS,** | : |  |
|  | : |  |
| **Plaintiff** | : | **CIVIL NO. 1:CV-07-0907** |
|  | : |  |
| **v.** | : | **(Judge Rambo)** |
|  | : |  |
| **COUNTY OF LYCOMING,** *et al.*, | : |  |
|  | : |  |
| **Defendants** | : |  |

## O R D E R

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed on behalf of Defendants the County of Lycoming, David Desmond, Catherine Lynch, and Medical Staff Member Doe (Doc. 19) is **GRANTED** in part and **DENIED** in part as follows:

a.    The motion is **GRANTED** as to Defendants the County of Lycoming and Desmond without prejudice.  Plaintiff is granted leave to amend his complaint to state a claim, if possible, against these Defendants.

b.    The motion is **DENIED** as to Defendants Lynch and Doe.

2.    Plaintiff's motion to appoint counsel (Doc. 39) is **GRANTED**, provided

that a member of the *Pro Bono* panel of the Middle District of Pennsylvania Chapter of the Federal Bar Association agrees to volunteer to represent Plaintiff.  Plaintiff is advised that locating *pro bono* counsel may take some time; he will be notified in writing of the results of the search for counsel as soon as possible.

3.    If the court is unable to locate counsel to represent Plaintiff, he shall proceed *pro se*.

4.    The deadline for Plaintiff to submit his opposition to the motion to dismiss/motion for summary judgment  filed on behalf of Defendant Keenan (Doc. 25) is stayed pending further order of court.

_____

/s/ Sylvia H. Rambo

Sylvia H. Rambo
United States District Judge


Dated: July 24, 2008.