IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEON NORRIS,** | : | |
| | : | |
| **Plaintiff** | : | CIVIL NO. 1:CV-07-0907 |
| | : | |
| v. | : | **(Judge Rambo)** |
| | : | |
| **CATHERINE LYNCH,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# **M E M O R A N D U M**

Plaintiff Leon Norris ("Norris"), an inmate currently confined at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix"), commenced this action *pro se* by filing a civil rights complaint pursuant to the provisions of 42 U.S.C. § 1983. (Doc. 1.) Norris names the following Defendants: the County of Lycoming; David Desmond, Warden of Lycoming County Prison in Williamsport, Pennsylvania ("LCP"); Catherine Lynch, a nurse employed by LCP; Medical Staff Member Doe, a nurse employed by LCP, (collectively, "LCP Defendants"); and William Keenan, M.D., a physician employed by LCP. Norris alleges that all Defendants were deliberately indifferent to his serious medical needs while he was incarcerated at LCP.

Before the court is a motion to dismiss Norris' complaint, or in the alternative, for summary judgment, filed on behalf of Defendant Dr. Keenan. For the reasons set forth below, the motion for summary judgment will be granted.

## I.     **Background**

Norris was incarcerated at LCP between January 2005 and June 2005 while he was awaiting a hearing on federal charges.[1]  (Doc. 1 ¶ 9; Doc. 31 ¶ 2.)  Norris suffers from Crohn's disease.  (Doc. 1 ¶ 9.)  In March 2005, Norris began to experience some initial signs that his Crohn's disease was recurring.  (*Id.* ¶ 10; Doc. 30 at 2.)  On March 24, 2005, an LCP medical staff member prescribed Metamucil.  (Doc. 1 ¶ 11; Doc. 30-3 at 2.)  That staff member also made a notation on Norris' medical chart that, if Norris' condition did not improve, a consultation with a gastrointestinal specialist should be considered.  (Doc. 30-4 at 3.)  Further, the staff member noted that a colonoscopy performed on March 11, 2002 revealed a tiny polyp in Norris' small bowel.  (*Id.*)

On April 4, 2005, a medical staff member made a notation on Norris' chart that, although his symptoms continued, the Metamucil was providing some relief.  (*Id.* at 4.)  The staff member also recommended referring Norris to a gastrointestinal

---

[1]  In response to the instant motion for summary judgment, Norris has not filed a counter statement of material facts.  In opposing a motion for summary judgment, Middle District Local Rule 56.1 provides, in relevant part, that "all material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."  Thus, because Norris has not filed a counter statement of material facts regarding Dr. Keenan's motion for summary judgment, all of the facts contained in Dr. Keenan's statement of material facts are deemed admitted.

specialist for evaluation.  (*Id.*)  Norris was subsequently evaluated by Susquehanna Gastrointestinal Specialists on April 20, 2005.  (*Id.*)

Norris also had a small bowel radiographic series performed at Williamsport Hospital on April 24, 2005.  (Doc. 30-6 at 1.)  The results of that small bowel series showed no pathologic abnormality.  (*Id.*)

On April 25, 2005, prison medical staff diagnosed Norris with folliculitis.  (Doc. 30-4 at 5; Doc. 31 ¶ 9.)  On May 9, 2005, Norris complained of a sore throat, ear ache, sinus drainage.  (Doc. 30-4 at 5; Doc. 31 ¶ 10.)  As a result, medical staff diagnosed Norris with sinusitis, pharyngitis, sinus congestion, and mouth ulcers.  (Doc. 1 ¶ 15; Doc. 30-4 at 5; Doc. 31 ¶ 10.)

On May 15, 2005, Norris was examined by a medical staff member who noted that he exhibited the following symptoms: fever, dizziness, chills, and canker sores in his mouth that were "no better."  (Doc. 1 ¶16; Doc. 30-4 at 6; Doc. 31 ¶ 11.)  The staff member also noted that Norris had lost sixteen pounds in two weeks, and should be seen by an "MD."  (*Id.*)

At 8:00 a.m. on May 17, 2005, Norris was seen by medical staff and complained of painful canker sores in his mouth that prevented him from taking his medications.  (Doc. 30-4 at 6, 7; Doc. 31 ¶ 12.)  Norris also requested that he be

3

admitted to the hospital. (Doc. 30-4 at 7.) The staff member noted that Norris had previously had an appointment with a gastrointestinal specialist, but that the results of any tests had not yet been received. (Doc. 30-4 at 6.)

Later that day, a staff member examined Norris again and noted that Norris still had chills, severe pain, canker sores, unusual weight loss, and was unable to eat, drink or take his medication. (*Id.* at 7.) That staff member also paged a Dr. Schlict, who, after reviewing Norris' symptoms, ordered that Norris be seen in the Williamsport Hospital emergency room for evaluation immediately. (*Id.*; Doc. 31 ¶ 14.)

Norris was admitted to the Williamsport Hospital emergency room at 6:58 p.m. on May 17, 2005, with complaints of chills, canker sores, weight loss, nausea, minor abdominal pain due to bowel problems, anxiety, and sinus and nose problems. (Doc. 30-5 at 4.) An emergency room physician examined Norris, blood tests were administered, and Norris received intravenous fluids and nutrients. (*Id.* at 5.) He was discharged from the emergency room at 11:35 p.m. in stable condition and in no distress, with a prescription for "magic mouthwash." (*Id.*) No other discharge orders were given. (Doc. 1 ¶ 28; Doc. 30-4 at 7; Doc. 31 ¶ 19.)

On May 18, 2005, upon Norris' return from the emergency room, an LCP medical staff member contacted Dr. Keenan to inform him of Norris' condition; that

he had been seen at the emergency room the previous evening; and that he had been prescribed "magic mouthwash" to treat his mouth ulcers. (Doc. 30-4 at 7; Doc. 31 ¶ 20.) Dr. Keenan then discontinued the emergency room order for "magic mouthwash" because it was not available at LCP, and started Norris on Colchicine and Carafate to treat the mouth ulcers . (Doc. 30-4 at 7; Doc. 31 ¶ 21.)

On May 19, 2005, Dr. Keenan examined Norris at LCP. (Doc. 30-4 at 8; Doc. 31 ¶ 22.) Dr. Keenan noted several scattered mouth ulcers which he diagnosed as giant aphthous ulcers. (Doc. 30-4 at 8; Doc. 31 ¶ 23.) Dr. Keenan also instructed Norris to continue treating with the Colchicine and Carafate for two weeks. (Doc. 30-4 at 8; Doc. 31 ¶ 24.) He indicated that he would reexamine Norris at the end of those two weeks. (*Id.*)

On May 20, 3005, an LCP medical staff member contacted Dr. Keenan with information from Norris that he had been told that he needed a follow-up appointment with a gastroenterologist. (Doc. 30-4 at 8; Doc. 31 ¶ 26.) The staff member did not inform Dr. Keenan that Norris had complained of bowel problems that day. (Doc. 31 ¶ 26.) Dr. Keenan told the staff member that Norris did not need a follow-up appointment at that time. (Doc. 30-4 at 8; Doc. 31 ¶ 28.) However, Dr. Keenan was aware that Norris had been seen previously by a gastroenterologist and that the test

5

results showed no abnormalities. (*Id.* ¶ 28.) In addition, Dr. Keenan was aware that Norris had a colonoscopy in 2002 that revealed only a tiny polyp and was otherwise normal, and that no follow-up was needed until 2007. (*Id.* ¶ 29.)

On May 22, 2005, Norris complained to a medical staff member that he was not breathing properly, not sleeping, not eating, and had nasal congestion. (Doc. 30-4 at 8; Doc. 31 ¶ 30.) The staff member noted that Norris was still suffering from prominent ulcers on his lips, inner cheeks and throat, and that he had stopped taking his medication over the weekend. (Doc. 30-4 at 8; Doc. 31 ¶ 31.)

Norris did not receive medical care on May 23, 2005. (Doc. 1 ¶ 35.) Further, Dr. Keenan was not consulted or asked to see Norris by any medical staff member on May 21, 22, or 23, 2005. (Doc. 31 ¶ 32.)

At 10:45 a.m. on May 24, 2005, Norris complained to a medical staff member that he was hyperventilating and having difficulty swallowing. (Doc. 30-4 at 8; Doc. 31 ¶ 33.) Dr. Keenan was paged twice at 10:50 a.m. (Doc. 30-4 at 9; Doc. 31 ¶ 35.) At 11:00 a.m., Norris expelled copious amounts of clear/yellow/green phlegm, after which Norris indicated that he could breath better and that the tightness in his throat had improved. (Doc. 30-4 at 9; Doc. 31 ¶ 36.) Norris also indicated that he was

experiencing pain during urination and had dark red clots with his bowel movements. (Doc. 30-4 at 9; Doc. 31 ¶ 37.)

At 11:25 a.m., Norris again expelled copious amounts of clear white phlegm. (Doc. 30-4 at 9; Doc. 31 ¶ 38.) At 11:30 a.m., Dr. Keenan was paged again. (Doc. 30-4 at 9; Doc. 31 ¶ 39.)

Dr. Keenan responded to the pages at 11:35 a.m. (Doc. 30-4 at 9; Doc. 31 ¶ 40.) After reviewing Norris' complaints and symptoms with the medical staff member, Dr. Keenan ordered Serax, an anti-anxiety medication, for Norris' hyperventilation; a complete blood count; a basic metabolic profile; a urinalysis dip; and a check of Norris' weight. (Doc. 30-4 at 10-11; Doc. 31 ¶¶ 40, 42, 43.) Dr. Keenan also instructed the staff member to give Norris Ensure to keep him hydrated and provide him with nutrients until he could be seen by Dr. Keenan or another physician at the clinic. (Doc. 30-4 at 10; Doc. 31 ¶ 42.) Dr. Keenan also told the staff member to call him back if Norris' weight was significantly less or his urine was abnormal. (Doc. 30-4 at 10; Doc. 31 ¶ 44.)

At 12:00 p.m., the medical staff member reported the results of the various tests to Dr. Keenan. (Doc. 30-4 at 10; Doc. 31 ¶ 45.) The results of the urinalysis dip indicated that Norris' urine was negative for glucose, nitrates, and leukocytes, and that

7

his urinary pH level was normal. (Doc. 30-4 at 19; Doc. 31 ¶ 46.) The urine test also showed that Norris' specific gravity was high, which indicated dehydration; that his ketone, protein and bilirubin were elevated; and that he had a small amount of blood in his urine. (Doc. 30-4 at 10; Doc. 31 ¶ 47.) In response, Dr. Keenan ordered that Norris be sent to the Williamsport Hospital emergency room immediately for IV hydration and evaluation. (Doc. 30-4 at 10; Doc. 31 ¶ 48.) Norris was subsequently admitted to Williamsport Hospital as an inpatient that day. (Doc. 30-4 at 10; Doc. 31 ¶ 49.)

In his complaint, Norris claims that the medical records from his stay in the Williamsport Hospital indicate that his bowel disease had become so extensive that it appeared to involve the vast majority of the mucosal surface of the colon. (Doc. 1 ¶ 46.) He also claims that one doctor noted that, in consultation with dermatology, ENT, and infectious disease specialists, all signs pointed in the direction that the majority of Norris' symptomatology may in fact be related to Crohn's disease. (*Id.* ¶ 47.) He asserts that during his stay at the Williamsport Hospital, doctors had to monitor him closely with serial x-rays and other methods "because of the severity of his disease." (*Id.* ¶ 48.) Finally, Norris asserts that his condition worsened while he was at Williamsport Hospital, and he was released on June 1, 2005 for additional

8

treatment at West Chester Medical Center in Valhalla, New York, where he remained until his condition stabilized.  (*Id.* ¶ 49.)

On May 18, 2007, Norris filed his complaint.  (Doc. 1.)  Service of the complaint was directed by order dated June 26, 2007.  (Doc. 9.)  Because service was not accomplished, on December 12, 2007, the summons was reissued as to all Defendants.  (Doc. 14.)

On February 4, 2008, a motion to dismiss Norris' complaint was filed on behalf of the LCP Defendants.  (Doc. 19.)  These Defendants filed a supporting brief on February 19, 2008.  (Doc. 23.)  Norris filed his opposition brief on March 3, 2008.  (Doc. 24.)

On March 10, 2008, Defendant Keenan filed a motion to dismiss and motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  (Doc. 25.)  Following a request for an extension of time, which was granted on April 7, 2008 (Doc. 27), Defendant Keenan submitted a supporting brief styled as being in support of a motion to dismiss/motion for summary judgment (Doc. 30-1).  Thus, he also submitted supporting exhibits (Docs. 30-3, 30-4, 30-5, 30-6, 30-7) and a statement of facts (Doc. 31).

9

After being granted one extension of time in which to file his opposition to Defendant Keenan's motion (*see* Doc. 37), Norris nevertheless failed to submit his opposition or request an additional extension of time in which to do so.  Therefore, by order dated June 27, 2008, the court directed Norris to file his opposition within fifteen days, or Defendant Keenan's motion would be deemed unopposed and addressed on the merits.  (*See* Doc. 38.)

On June 30, 2008, Norris filed a motion for appointment of counsel (Doc. 39) and a supporting brief (Doc. 40).  In a memorandum and order addressing the LCP Defendants' motion to dismiss (Doc. 19) and Norris' motion for appointment of counsel (Doc. 39), the court granted in part and denied in part LCP Defendants' motion to dismiss Norris' complaint, (*see* Doc. 41).  The court also granted Norris' motion for appointment of counsel, provided that *pro bono* counsel could be found through the *Pro Bono* Panel of the Federal Bar Association for the Middle District of Pennsylvania.  (*See id.*)

On July 25, 2008, the court wrote to Charles Rubendall, II, Esquire, then-head of the *Pro Bono* Panel to request that he refer the case to a member of the Panel.  (*See* Doc. 42.)  On January 21, 2009, Stephen Greecher, Jr., current-head of the *Pro Bono* Panel, advised the court that the Panel has been unsuccessful in obtaining a volunteer

attorney to undertake representation of Norris.  (*See* Doc. 45.)  Because the court was unable to locate counsel to assist Norris in this matter, by order dated January 23, 2009, the court informed Norris that he must proceed *pro se* and litigate the case himself.  (*See* Doc. 46.)  Further, the court lifted the stay of the deadline for Norris to submit his opposition to Defendant Keenan's motion to dismiss, or in the alternative, for summary judgment, and directed Norris to file a brief in opposition to Defendant Keenan's motion.  (*See id.*)  Norris filed his opposition brief on February 26, 2009.  (Doc. 47.)  Therefore Defendant Keenan's motion to dismiss, or in the alternative, for summary judgment, is now ripe for disposition.

**II.     Standards of Review**

    **A.     Motion to Dismiss**

Defendant Keenan has filed a motion which, in part, seeks dismissal of the complaint on the grounds that Norris' complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion, however, goes beyond a simple motion to dismiss under Rule

12(b)(6) because it is accompanied by evidentiary documents outside the pleadings contravening Norris' claims.[2] Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The court will not exclude the evidentiary materials accompanying Defendant Keenan's motion to dismiss because Norris has also been given a reasonable opportunity to present material relevant to the motion. Thus, Defendant Keenan's motion to dismiss, or in the alternative, for summary judgment, shall be treated solely as seeking summary judgment.

### B. Motion for Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).

---

[2] As set forth *supra*, Defendant Keenan filed a motion to dismiss and motion to strike pursuant to Fed. R. Civ. P. 12(f) on March 10, 2008. (Doc. 25.) However, Defendant Keenan styled his brief as being in support of a motion to dismiss/motion for summary judgment. (Doc. 30.) Because he also submitted supporting exhibits (Docs. 30-3, 30-4, 30-5, 30-6, 30-7) and a statement of facts (Doc. 31), the court will construe Defendant Keenan's March 10, 2008 motion to dismiss as a motion to dismiss, or in the alternative, for summary judgment.

12

A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id*. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must

amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III. Discussion

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[3] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

In the instant case, Defendant Keenan seeks dismissal of Norris' complaint on the grounds that Norris failed to establish that Defendant Keenan was deliberately

---

[3] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

indifferent to his serious medical needs.  As such, the court will examine Norris' Eight Amendment claim to determine whether summary judgment in favor of Defendant Keenan is warranted.

To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).  There are two components to this standard: Initially, a plaintiff must make an "objective" showing that the medical need was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).[4]

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients.  Courts will

---

[4] The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, where the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napolean*, 897 F.2d 103, 109 (3d Cir. 1990); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

15

'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White*, 897 F.2d at 108-10. *See also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (mere allegations of malpractice do not raise issues of constitutional import).

In the instant case, throughout the relevant time period, Norris was seen on numerous occasions by various medical personnel at LCP for treatment of symptoms ranging from bowel problems to mouth ulcers. He was repeatedly evaluated and was prescribed medication to ease his discomfort. Diagnostic tests were ordered, and performed, to facilitate treatment. Dr. Keenan himself either examined Norris, or issued verbal orders with respect to the care and treatment of Norris, five times between May 18 and May 24, 2005. When Norris returned from the emergency room on May 18, 2005, Dr. Keenan started him immediately on a course of Colchicine and Carafate to treat his mouth ulcers as a substitute for the "magic mouthwash" Norris had received in the emergency room because "magic mouthwash" was simply not available at LCP.[5] Further, on May 24, 2005, Dr. Keenan ordered prison medical staff members to transport Norris to the Williamsport Hospital emergency room for treatment immediately upon receiving test results which indicated the need for further evaluation. Unfortunately, despite all the medical intervention, Norris continued to

---

[5] To the extent that Norris claims that Dr. Keenan should have been treating his bowel problems after he returned from the emergency room, there is nothing in the record to indicate that Norris complained of bowel problems when Dr. Keenan examined him on May 19, 2005. (*See* Doc. 47 ¶¶ 10-12.) Further, while Norris contends that Dr. Keenan should have reviewed his medical records from March 2005, which indicated rectal bleeding, in order to properly treat him nearly two months later for possible related symptoms, any alleged negligence by Dr. Keenan in failing to review the reports does not rise to the level of "deliberate indifference" in violation of the Eighth Amendment. *See Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'").

suffer from discomfort.  This is clearly a case where Norris has been given medical attention and is dissatisfied with the course of treatment and subsequent results.  An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235.  Courts will not second guess whether a particular course of treatment is adequate or proper.  *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997).  Moreover, there is nothing in the record demonstrating that any significant delay in treating Norris' medical condition was deliberate or intentional on the part of Dr. Keenan.  Under these circumstances and based upon the well-documented course of treatment set forth in the record, the court finds that Dr. Keenan was not deliberately indifferent to Norris' serious medical needs.  Thus, Norris has failed to establish an Eighth Amendment violation. Defendant Keenan's motion for summary judgment will be granted.

  An appropriate order follows.

             s/Sylvia H. Rambo
             SYLVIA H. RAMBO
             United States District Judge

Dated:  March 18, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEON NORRIS,** | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:CV-07-0907 |
| | : | |
| v. | : | **(Judge Rambo)** |
| | : | |
| **CATHERINE LYNCH,** *et al.*, | : | |
| | : | |
| Defendants | : | |

# **O R D E R**

**AND NOW**, this 18th day of March, 2009, in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant Keenan's motion for summary judgment (Doc. 25) is **GRANTED**.

2. The Clerk of Court shall defer the entry of the grant of summary judgment in favor of Defendant Keenan until the conclusion of this case.

                                                 s/Sylvia H. Rambo
                                                 SYLVIA H. RAMBO
                                                 United States District Judge