IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEON NORRIS,                          :
                                      :
          Plaintiff                   :        CIVIL NO. 1:CV-07-0907
                                      :
     v.                               :        (Judge Rambo)
                                      :
CATHERINE LYNCH, *et al.*,            :
                                      :
          Defendants                  :

## M E M O R A N D U M

Plaintiff Leon Norris ("Norris"), an inmate currently confined at the Federal

Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix"), commenced this

action *pro se* by filing a civil rights complaint pursuant to the provisions of 42 U.S.C.

§ 1983 on May 18, 2007, as amended, May 11, 2009.  (Doc. 52.)  Norris names the

following Defendants: the County of Lycoming; David Desmond, Warden of

Lycoming County Prison in Williamsport, Pennsylvania ("LCP"); Catherine Lynch, a

nurse employed by LCP; and Medical Staff Member Doe, identified by Defendants as

Cheryl Schrum, (*see* Doc. 56 ¶ 43), a nurse employed by LCP.  Norris alleges that

Defendants were deliberately indifferent to his serious medical needs while he was

incarcerated at LCP.

Before the court is a motion for summary judgment, filed on behalf of Defendants. (Doc. 55.) For the reasons set forth below, the motion for summary judgment will be granted.

## I.   Background

### A.   Facts

In support of their motion for summary judgment, Defendants have submitted a statement of material facts. (Doc. 56.) Norris has not submitted a counter-statement of material facts as required by M.D. Pa. Local Rule 56.1. As such, all facts set forth in Defendants' statement of undisputed material facts (Doc. 56) are deemed admitted. *See* M.D. Pa. Local Rule 56.1.[1] Those facts are as follows.

Norris was incarcerated at LCP from January 5 through June 1, 2005. (Doc. 56 ¶ 2.) In 2005, medical clinics were held at LCP every Monday and Thursday evenings and were staffed by various local contracted physicians. (*Id.* ¶ 3.) During a medical screening on January 12, 2005, Norris reported no bowel or intestinal problems. (*Id.* ¶ 5.)

---

[1] Middle District Local Rule 56.1 provides, in pertinent part, "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

On March 10, 2005, Norris' previous medical records were provided to LCP's nursing staff by Susquehanna Health System. (*Id.* ¶ 6.) These records indicated that Norris had a colonoscopy performed in 2002 that revealed a tiny polyp and showed no ulcerative colitis and was otherwise normal. (*Id.*)

On March 24, 2005, Norris discussed his bowel concerns with Dr. Anderson, a licensed physician contracted by LCP. (*Id.* ¶ 7.) Dr. Anderson examined Norris and noted that he had a long history of bowel problems. (*Id.*) However, Norris previously had a sigmoidoscopy and a colonoscopy which both indicated "Crohn's and IBS ruled out." (*Id.*) Dr. Anderson prescribed Metamucil, as needed, and noted in her file that if Norris did not improve, a gastroenterologist ("GI") consult should be considered. (*Id.*)

On April 4, 2005, Norris had a follow up appointment with Dr. Anderson, but refused a rectal exam/anoscopy, and was referred to a GI for evaluation. (*Id.* ¶ 8.) On April 5, 2005, an appointment with Susquehanna Gastroenterology Associates was scheduled for April 20, 2005. (*Id.* ¶ 9.) Norris attended that appointment, and returned to LCP with orders that the office would contact the nurses as LCP if they needed to schedule a colonoscopy. (*Id.* ¶ 10.)

On April 21, 2005, a small bowel series was scheduled for April 24, 2005 for Norris. (*Id.* ¶ 11.) That small bowel series was performed on that date at the Williamsport Hospital. (*Id.* ¶ 12.) The results of the tests were faxed to LCP on May 17, 2005. (*Id.* ¶ 13.) Those results, set forth on the Radiology Result Document, indicated no pathologic abnormality. (*Id.* ¶ 14.)

On April 25, 2005, Norris was examined by a contracted physician at LCP and diagnosed with folliculitis. (*Id.* ¶ 15.) On May 9, 2005, he was examined by a contracted physician after complaining of a sore throat, ear ache, and sinus drainage. (*Id.* ¶ 16.) The physician diagnosed him with sinusitis, pharyngitis, sinus congestion, and mouth ulcers. (*Id.*)

On May 15, 2005, Norris complained of a fever, dizziness, and chills, that he had lost sixteen pounds in two weeks, and that he continued to suffer from canker sores in his mouth. (*Id.* ¶ 17.) Defendant Lynch, a licensed practical nurse,[2] examined him on that date, and found Norris to have a fever, that he had lost sixteen pounds, and that he had canker sores in his mouth. (*Id.* ¶¶ 18, 42.) Defendant Lynch determined that Norris was not in immediate distress, but noted that he should be seen by a "MD." (*Id.*)

---

[2] Defendants indicate that, as a licensed nurse in Pennsylvania, Defendant Lynch only administers medication prescribed by licensed physicians. (Doc. 56 ¶ 45.)

Following Defendant Lynch's May 15, 2005 examination, she placed Norris on the Clinic List to see the doctor at the next doctor clinic night, scheduled for May 16, 2005. (*Id*. ¶ 19.) During that doctor clinic, Dr. Timco examined Norris and noted that he had chills, canker sores, weight loss, and some folliculitis. (*Id*. ¶ 20.) Dr. Timco made a notation in the medical progress notes to "get SBFT [small bowel series] results."[3] (*Id*.) Further, Dr. Timco diagnosed Norris with irritable bowel syndrome, placed him on a bland diet, and ordered milk at every meal. (*Id*.)

The results from the small bowel series were received by the LCP medical staff by fax from the Williamsport Hospital on May 17, 2005. (*Id*. ¶ 22.) Norris was seen at LCP by a Dr. Schlict that same day, who, after reviewing Norris' symptoms, ordered that he be taken to the Williamsport Hospital Emergency Room for evaluation. (*Id*. ¶ 23.) As a result, Norris checked into the Williamsport Hospital Emergency Room at 6:58 p.m. on May 17, 2005. (*Id*. ¶ 24.) His chief complaints while there were of chills, canker sores, and weight loss. (*Id*. ¶ 25.) An Emergency Room physician examined Norris and, after blood tests were taken, prescribed an IV of normal saline solution and no additional treatment or medication. (*Id*. ¶ 26.)

---

[3] Defendants note that the Lycoming County Physicians Order entry by Dr. Timco is dated May 16, 2005, but that his progress note for that same evaluation is erroneously dated May 17, 2005. (Doc. 56 ¶ 21.)

Thereafter, Norris was discharged from the Emergency Room at 11:35 p.m. on May 17, 2005, in stable condition and in no distress.  (*Id*. ¶ 27.)  At the time of his discharge, Norris was prescribed with "magic mouthwash" only.  (*Id*. ¶ 28.)

On May 18, 2005, upon Norris' return from the emergency room, an LCP medical staff member contacted Dr. Keenan to inform him of Norris' condition; that he had been seen at the emergency room the previous evening; and that he had been prescribed "magic mouthwash" to treat his mouth ulcers.  (*Id*. ¶ 29.)

On May 22, 2005, Norris complained to Defendant Lynch that he was not breathing properly, not sleeping, not eating, and had nasal congestion.  (*Id*. ¶ 30.)  Defendant Lynch noted that Norris was still suffering from prominent ulcers on his lips, inner cheeks and throat.  (*Id*. ¶ 31.)  After examining and evaluating Norris' vital signs, Defendant Lynch determined that he was in no immediate distress and that his vital signs were all normal.  (*Id*.)

At 10:45 a.m. on May 24, 2005, Norris complained to LCP Nurse Oakes that he was short of breath, hyperventilating, and having difficulty swallowing.  (*Id*. ¶ 32.)  At 11:00 a.m., Norris expelled copious amounts of clear/yellow/green phlegm, after which he indicated that he could breath better and that the tightness in his throat had improved.  (*Id*. ¶ 33.)  Norris also indicated at that time that he was experiencing pain

during urination and on occasion had dark red clots with his bowel movements. (*Id.*) At 11:25 a.m., Norris again expelled copious amounts of clear white phlegm. (*Id.* ¶ 35.) Dr. Keenan was paged on May 24, 2005. (*Id.* ¶ 36.) After reviewing Norris' complaints and symptoms, Dr. Keenan ordered Serax, an anti-anxiety medication, for Norris' hyperventilation; a complete blood count; a basic metabolic profile; a urinalysis dip; and a check of Norris' weight. (*Id.*) Dr. Keenan also instructed the nurse to give Norris Ensure to keep him hydrated and provide him with nutrients until he could be seen by Dr. Keenan or another physician at the clinic. (*Id.*)

The results of the urinalysis dip indicated that Norris' urine was negative for glucose, nitrates, and leukocytes, and that his urinary pH level was normal. (*Id.* ¶ 37.) The urine test also showed that Norris' specific gravity was high, which indicated dehydration; that his ketone, protein and bilirubin were elevated; and that he had a small amount of blood in his urine. (*Id.* ¶ 38.) In response, Norris was sent to the Williamsport Hospital emergency room immediately for IV hydration and evaluation. (*Id.* ¶ 39.) Norris was subsequently admitted to Williamsport Hospital as an inpatient that day, May 24, 2005. (*Id.* ¶ 40.)

In his amended complaint, Norris claims that he informed the medical staff at LCP of his condition, Crohn's disease, in March of 2005, but medical staff failed to

properly treat him. (Doc. 52 at 2.) Specifically, he claims that he received inadequate treatment from nurses rather than medical doctors qualified to diagnose his condition. (*Id*. at 6.) He contends that the delay in treating him until May of 2005 at Williamsport Hospital caused him pain and suffering. (*Id*.) Finally, Norris asserts that his condition worsened while he was at Williamsport Hospital, and he was released for additional treatment at West Chester Medical Center in Valhalla, New York, where he remained until his condition stabilized. (*Id*. at 4.)

### B.   Procedural History

On May 18, 2007, Norris filed his complaint, naming the Defendants set forth herein as well as Dr. Keenan. (Doc. 1.) Service of the complaint was directed by order dated June 26, 2007. (Doc. 9.) Because service was not accomplished, on December 12, 2007, the summons was reissued as to all Defendants. (Doc. 14.)

On February 4, 2008, a motion to dismiss Norris' complaint was filed on behalf of Defendants. (Doc. 19.) Defendants filed a supporting brief on February 19, 2008. (Doc. 23.) Norris filed his opposition brief on March 3, 2008. (Doc. 24.)

On March 10, 2008, Defendant Keenan filed a motion to dismiss and motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (Doc. 25.) Following a request for an extension of time, which was granted on April 7, 2008

(Doc. 27), Defendant Keenan submitted a supporting brief styled as being in support of a motion to dismiss/motion for summary judgment (Doc. 30-1). Thus, he also submitted supporting exhibits (Docs. 30-3, 30-4, 30-5, 30-6, 30-7) and a statement of facts (Doc. 31).

After being granted one extension of time in which to file his opposition to Defendant Keenan's motion (*see* Doc. 37), Norris nevertheless failed to submit his brief in opposition or request an additional extension of time in which to do so. Therefore, by order dated June 27, 2008, the court directed Norris to file his opposition brief within fifteen days, or Defendant Keenan's motion would be deemed unopposed and addressed on the merits. (*See* Doc. 38.)

On June 30, 2008, Norris filed a motion for appointment of counsel (Doc. 39) and a supporting brief (Doc. 40). In a memorandum and order addressing the Defendants' motion to dismiss and Norris' motion for appointment of counsel, the court granted in part and denied in part Defendants' motion to dismiss Norris' complaint on July 24, 2008, and granted Norris leave to amend his complaint to state a claim if possible against Defendants. (Doc. 41.) The court also granted Norris' motion for appointment of counsel, provided that *pro bono* counsel could be found

through the *Pro Bono* Panel of the Federal Bar Association for the Middle District of Pennsylvania. (*See id.*)

On July 25, 2008, the court wrote to Charles Rubendall, II, Esquire, then-head of the *Pro Bono* Panel to request that he refer the case to a member of the Panel. (*See* Doc. 42.) On January 21, 2009, Stephen Greecher, Jr., current-head of the *Pro Bono* Panel, advised the court that the Panel has been unsuccessful in obtaining a volunteer attorney to undertake representation of Norris. (*See* Doc. 45.) Because the court was unable to locate counsel to assist Norris in this matter, by order dated January 23, 2009, the court informed Norris that he must proceed *pro se* and litigate the case himself. (*See* Doc. 46.) Further, the court lifted the stay of the deadline for Norris to submit his opposition to Defendant Keenan's motion to dismiss, or in the alternative, for summary judgment, and directed Norris to file a brief in opposition to Defendant Keenan's motion. (*See id*.) Norris filed his opposition brief on February 26, 2009. (Doc. 47.) By memorandum and order dated March 18, 2009, the court granted Defendant Keenan's motion for summary judgment and terminated him as a party. (Doc. 49.)

On May 11, 2009, Norris filed an amended complaint against Defendants. (Doc. 52.) On May 29, 2009, Defendants filed their answer and affirmative defenses.

(Doc. 53.)  By order dated August 3, 2009, the court directed that all discovery be completed on or before October 2, 2009, and that any dispositive motions be filed no later than November 2, 2009.  (Doc. 54.)  Defendants Lynch and Schrum served Norris with expert interrogatories which Norris has not answered.  (*See* Doc. 62 at 2.) On November 2, 2009, Defendants filed a motion for summary judgment and statement of material facts.  (Docs. 55 & 56.)  Their brief in support of the motion for summary judgment was filed on November 16, 2009.  (Doc. 62.)  Norris has filed a brief in opposition to the motion.  (Doc. 64.)  Thus, this matter is now ripe for disposition.

## II.   Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id*.  The court

must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.    Discussion

Defendants have moved for summary judgment on the following grounds: (1) Norris failed to exhaust his administrative remedies; (2) the amended complaint against Defendants Lynch and Medical Staff Member Doe should be dismissed as barred by the applicable statute of limitations; and (3) there exists no genuine issue of material fact with which to find deliberate indifference to Norris' serious medical needs.  Upon consideration of these grounds for dismissal, the court will grant the motion for summary judgment on the basis that Norris has failed to exhaust his administrative remedies prior to initiating this suit.

As noted above, Defendants first seek summary judgment based on Norris' failure to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).  The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he

PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."). Because an inmate's failure to exhaust under

the PLRA is an affirmative defense, the inmate is not required to specially plead or

demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Failure to exhaust administrative remedies must be pled and proved by the defendants.

*Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies]

irrespective of the forms of relief sought and offered through administrative avenues."

*Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper

exhaustion, that is, "a prisoner must complete the administrative review process in

accordance with the applicable procedural rules, including deadlines, as a precondition

to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

"Requiring exhaustion allows prison officials an opportunity to resolve disputes

concerning the exercise of their responsibilities before being haled into court." *Jones*,

549 U.S. at 204. Failure to substantially comply with procedural requirements of the

applicable prison's grievance system will result in a procedural default of the claim.

14

*Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.").  Additionally, "it is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis*, 204 F.3d at 71.

Further, the United States Court of Appeals for the Third Circuit has stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."  *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (not precedential).  In citing to a case from the United States Court of Appeals for the Eighth Circuit, *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003), the *Oriakhi* Court found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. "[T]he district court must look to the time of filing, not the time the district court is

rendering its decision, to determine if exhaustion has occurred." *Oriakhi*, 165 F.
App'x at 993 (quoting *Johnson*, 340 F.3d at 627-28).

The Pennsylvania DOC has an Inmate Grievance System which permits any
inmate to seek review of problems that may arise during the course of confinement.
37 Pa. Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-
ADM 804, Inmate Grievance System. After an attempt to resolve any problems
informally, an inmate may submit a written grievance to the facility's Grievance
Coordinator for initial review. An inmate may then appeal an adverse decision of the
Grievance Coordinator to the Superintendent of the institution, and can finally appeal
to the Secretary of the DOC Office of Inmate Grievances and Appeals, located in
Camp Hill, Pennsylvania. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000)
(outlining Pennsylvania's grievance review process).

Further, in the instant case, Defendants have set forth the following with respect
to LCP's grievance procedure. LCP issues and distributes an Inmate Handbook to all
inmates upon commitment to the prison. (Doc. 56 ¶ 47.) The Inmate Handbook
describes the request slip and grievance procedure for inmate complaints. (*Id*. ¶ 48.)
As part of the grievance procedure, an inmate is required to initially submit a request

slip to the shift supervisor, then to the warden or deputy warden, and finally to the LCP Board.  (*Id*. ¶ 49.)

In the instant motion, Defendants claim that summary judgment should be granted in their favor because Norris failed to take any administrative action with respect to the alleged misconduct of Defendants prior to initiating this lawsuit. Specifically, while Defendants do concede that Norris filed several request slips seeking medical treatment, they assert that at no time did any prison officials, namely the warden, deputy warden, or LCP Board, receive a grievance from Norris which complies with LCP's grievance procedure.

The record on summary judgment reflects that Norris submitted the following request slips to the LCP nurse.  In January 2005, Norris filed two request slips.  On January 27, 2005, Norris filed a request which stated, "I suffer e [sic] since being here it's begin to get worst.  I've tried the lotions on commissary and it doesn't work.  Can you help me."  (Doc. 57 at 22.)  On January 30, 2005, he filed a request slip stating, "Upon my arrival into the jail I've been experiencing some ring in both ears.  If possible can I have the dr. look at my ears."  (*Id*. at 21.)

Norris filed one request slip in February 2005.  On February 14, 2005, he filed a request slip stating, "Please place me on the list to see the doctor.  My feet have cracks in them.  I was told nothing can be done, but my pain is unbearable."  (*Id*. at 20.)

Norris filed five request slips in March 2005.  On March 3, 2005, he filed a request slip stating, "I problem that I came down to see the doctor Thursday night seems to being doing good for my face, however about my groin area it doesn't seem to be doing to well."  (*Id*. at 19.)  On March 4, 2005, he filed another request slip stating, "I am having problems with chest pain.  When eat food it hurts my upper chest when I swallow the food.  It doesn't happen when I swallow only when it's food.  Can I see a dr."  (*Id*. at 17.)  On March 8, 2005, Norris filed a request slip stating, "I would like to see the doctor about my acne problem.  Also I have a private matter that needs a male dr."  (*Id*. at 18.)  On March 13, 2005, he filed a request slip stating, "My eyes are really bad to the point where I can only read books up close and then even when I do that the words sometimes get blurred."  (*Id*. at 16.)  And, on March 20, 2005, he filed a request slip stating, "I need to speak to a doctor about the problems that I've been experiencing.  This is in regard to me having various test on my intestines to see what causes my problems."  (*Id*. at 15.)

In April 2005, Norris filed four request slips.  On April 3, 2005, Norris filed a request slip stating, "I was treated for canker sores in my mouth and I'm still having problems with them.  It's really bothering me when I eat."  (*Id*. at 14.)  On April 19, 2005, he filed a request slip stating, "I have a feeling in my nose like I was bit in it.  It's been hurting 3 days now.  Can I be seen by someone?"  (*Id*. at 13.)  On April 19, 2005, he filed a request slip stating, "The problem I had with the folliculitis is back in my groin area."  (*Id*. at 12.)  And, on April 29, 2005, Norris filed a request slip stating, "I was recently on a medication for acid reflux and it was working, however since being taking off of it, it has come back."  (*Id*. at 10.)

Norris filed two request slips in May 2005.  On May 1, 2005, he filed a request slip stating, "My acid reflux has returned."  (*Id*. at 11.)  And, on May 4, 2005, Norris filed a request slip stating, "The medicine I received for my sore throat, ear ache, and sinus problem is worst!  I need something better."  (*Id*. at 9.)

Defendants argue that these request slips do not satisfy LCP's grievance procedure, and therefore his amended complaint should be dismissed for failure to exhaust administrative remedies.  They further assert that these request slips do not reflect Norris' allegations of deliberate indifference to his medical needs, or demonstrate that Norris completed LCP's grievance process.  In his brief in opposition

to the instant motion, Norris does not address Defendants' argument relating to the failure to exhaust administrative remedies. Rather, he states,

> Petitioner does object to the Defendants motion for summary judgment because there are in fact "desputed [sic] facts" as to the reason why this Plaintiff had to be rushed to the emergency room from the Lycoming County Prison where this Plaintiff was being housed as a pretrial prisoner. It is clear from Plaintiff's civil complaint that the Defendants failed to consider this Plaintiff's serious medical condition.

(Doc. 64 at 2.) This response clearly does not address Norris' exhaustion attempts. The record on summary judgment, however, reflects that Norris has failed to exhaust his administrative remedies with respect to his claims of deliberate indifference prior to filing this action. As a result, the court will grant summary judgment in favor of Defendants.[4]

## IV.    **Conclusion**

For the reasons set forth herein, Defendants' motion for summary judgment will be granted on the basis of Norris' failure to properly exhaust administrative remedies relating to all claims in the instant action.

An appropriate order will issue.

_____

[4]  Because exhaustion of administrative remedies is a threshold issue, there is no need to address Defendants' alternative arguments.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEON NORRIS,                          :
                                      :
          Plaintiff                   :        CIVIL NO. 1:CV-07-0907
                                      :
     v.                               :        (Judge Rambo)
                                      :
CATHERINE LYNCH, *et al.*,            :
                                      :
          Defendants                  :

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY**

**ORDERED THAT:**

1)  Defendants' motion for summary judgment (Doc. 55) is **GRANTED**.

2)  The Clerk of Court is directed to **ENTER** judgment in favor of Defendants

and against Plaintiff.

3) The Clerk of Court is directed to **CLOSE** this case.

                              s/Sylvia H. Rambo
                              United States District Judge

Dated:  June 10, 2010.